Good morning, Your Honors. Good morning. I'm David Markham on behalf of Appellants. Obviously, this area of meal-rest-break law is evolving probably faster in California than just by counting the number of cases. And if one had thought a couple of years back when the California Supreme Court decided the Brinker case, which is the second time Brinker got up, that all was settled and put to rest. Indeed, it was not. Obviously, Brinker had language in it, a sentence, I think it's the famous page 1053 of the California Supreme Court decision, which said if the defendant has a policy or practice, it was talking about off-the-clock work. But from that, courts were then left to try to decide could a policy or practice, if it's legal and in the face of a policy manual and lawful, therefore result in a situation where a class could not be certified. Later, in decisions, including one from this Court, it was recognized that there could be a de facto practice or policy. If I can just kind of cut to the quick, at least in terms of what I'm concerned about. It seems to me on the commonality issue, the real question here is whether the company forced its employees to take either short or late meal breaks. Isn't that really the issue that we're wrestling with here? No, Judge, it is not. Okay, tell me why. What we're saying is that the company wrote or someone wrote a computer program or wrote a computer program. And when the electronic computer punches for time were searched by that program, it looked out for missed breaks. In other words, no punch out for lunch, no punch back in. And then lawfully, we contend, dropped the one hour's premium into everyone's paycheck. But that is merely one of the three types. Okay, but we're talking about commonality here. Yes. And in order for you to succeed, you've got to show that it's a company-wide practice that affects pretty much everybody. Right. And in this particular case, as I understand it, the company had a practice of manually, people could say this is what happened, they would manually insert this into the payroll program, they would get paid for whatever it was. But that there was no policy of forcing people to work through lunch and so on. Is that correct factually? Am I missing something? What we're saying is that the computer program, there are two programs, the time, the payroll punch program, and the premium programmer module that searched it. The program itself that did the search was defective in the sense that when the employee put down 15 minutes, 12 to 12.15 instead of 12 to 12.30, there was no way in the system to catch that type of violation. And the absence of that capability in the program is what created the common practice which we allege to be unlawful. We don't dispute whether they were forced or not. We simply say what the employees put down were conclusive. And, of course, that's where bonds and Safeway, the decision last summer. But there's another step from there. Let's say the program did exactly what you're advocating, that it disclosed a short break, a 15-minute break. So what? Isn't there another step that must be demonstrated? And that is that the 15-minute break was involuntary, was at the employer's request. The answer, Your Honor, is that's getting back to my original discussion of where the law was evolving. After Brinker was decided on the issue of, oh, were some of these breaks voluntary, an employee wanted to go home early to watch a baseball game, or were they truly due to the press of business? Too much work, too many customers, not enough staffing. And in the California Supreme Court, Justice Werdegar, joined by Justice Liu, wrote a concurring opinion, saying we'll analogize and follow the time, the unpaid overtime law, as it was largely not identically copied out of the Fair Labor Standards Act, and simply say that because the duty to record that time is on the employer, the reasons why the break was missed must be also recorded. And then last, I believe, July or the end of June, I don't remember exactly which, the Second District Court of Appeals said, indeed, that concurrence is now the law of California. If an employer has a record of short breaks or breaks starting after the fifth hour or missing breaks, it also has a duty to record the reasons why. Because imagine if we were to form a company, we were on the Board of Directors, and we were to have a system, obviously. But you're creating your complaint based on the technology rather than on the, you know, let's assume an employer didn't have a computerized system, is, you know, the old-fashioned, you know, time card that you fill out manually and submit. I mean, I just don't know why the fact that there's a computerized system would be material. What the computerized system was is it was the system relied upon that brought Jenny Craig partially, for certain types of break irregularities under the statute, in compliance, but didn't cover all the, well, I guess there's three bases, not four bases. So Brinker requires an employer to upgrade its software in a certain way? It doesn't talk about does it have to be technologically versus manual, but either way now where we are under Safeway Vons, which is now the latest statement of California law and the Werdegar-Lew concurrence, whether manual or computerized, if there is a missing break, if there is a foreshortened break, which is I think we found an average of just under two per pay period in the facts of this case, in each of the half-monthly pay periods. If that happens, the employer has to record this was press of business or no, this was the employee who wanted to go. Are you suggesting that Safeway Vons, as you call it, relying on Justice Lew's concurrence, is the law that applies in this case where the actions or inactions occurred long before that case? The answer is, Your Honor, that partly after the violations occurred, after that case occurred, but it wasn't creating new law. It was the Werdegar-Lew concurrence. It didn't create new law. It said based on the statutes, the employer has to have a record if it wants to use a consent defense. So you're saying that before Justice Lew wrote his concurrence, an employer was obligated to have a record based upon then law, have a record to explain why each employee didn't receive exactly what the law required. Is that what you're saying? Absolutely, Your Honor. And the reason is because it, for example, in Mount Clemens Pottery and other fair labor standards case when the Supreme Court said, yes, there now is a duty of an employer to record, have some record of what the real work hours are, not what the boss told the employee to punch in and punch out. It said this must be the case in this case because that's what the law of necessity requires because otherwise an employer could always walk. It sounds like it sort of goes back to what my colleague mentioned a minute ago. It sounds like those who have technology are going to be blamed for having bad technology, bad software programs as opposed to people who have old-fashioned time cards where it's the employee's duty to enter the data as that employee experiences his or her time's off, et cetera, et cetera. Is that what you're saying? Not exactly. Whether manual or computerized, the employee has to punch their hours. And we're saying here what's in the record is the hours. It's the actual hours. But this employer, if I understood it correctly, if this employer provided, notified the employees, if you have time that's missing, let us know and we'll take care of it. And they had a program, not a program, they had people who would enter the data and they would be compensated for it. But it's on an individual basis. Is that incorrect? No, because I think, Judge, where we're having a disconnect is we're saying everything the employees entered, in fact, was correct. Okay. And if it's all correct on their time cards, the 15 people sampled over a little more than a year, there were 86 of those either foreshortened or late breaks for which the premiums were not paid. Premiums were always paid by the system when a break was missed completely. And in the situation where the breaks are short or late, if an employer does not record the reasons and wants to use the voluntariness defense, you never have a class error. And, again, that goes back to the software problem. If I understand you correctly, you're saying there was a software glitch in this program, and even though the employee entered the correct hours, there was a certain mathematical percentage of the hours that were entered that were incorrect, right? No, no, no. The hours were always correct. Okay. Then the amount that was paid. It was whether the dollars were paid. For example, if the programmer had made a mistake in another line of code and paid 95% of the premiums when they paid it, we would be saying there was an error in a software system. Do you have to show that the employer intentionally did that, that they were forcing people to take these or they intentionally docked people's pay? Not for the entitlement to the premium. There was no willfulness or intent. Okay. So, in other words, we're back to software. Software was wrong. Employer has to pay based on a commonality from your perspective. Correct. If software, for example, was calculating the overtime rate at 1.4. There was nothing wrong with this. There really was nothing wrong with the software. It was 100% accurate. What I understand you saying is the problem with the software is that it didn't spit out an explanation for the failure to pay the premium. Okay. In sequence, what we're saying is, yes, it worked partially correct. The duty was to identify irregularities, the three basic rules. The software wouldn't disclose the reason, correct? And identify them. The employer could say, maybe I want to pay and maybe I don't want to pay for the completely missed breaks that dropped the premiums into everybody's paycheck. But for the other two types of violations, there was no way of tracking, keeping a record of when those violations occurred. Do you interpret Safeway Bonds, this concurrence, to prohibit an employer for putting the burden on the employee to give an explanation to the employer? Judge, if you went back in time, I keep pushing my – I probably shouldn't, and I'm using my time up.  The narrow holding of the Fourth District Court of Appeal in San Diego that got reversed was the notion that because the duty was on the employee to record the reason for the missed break, i.e., voluntary wanting to watch the baseball game versus too much press of business, that is an individualized, uncommon issue, and therefore, as a matter of law, we must decertify or affirm the denial of certification. That's the actual holding in Brinker that was reversed by the Supreme Court, that the employer has the duty not only to track the irregularity, in other words, missed short, late breaks, but also, as to where we are today with bonds and Safeway, the duty to record why. It's like almost in a securities case, because it's an issue on which the employer has the burden of proof, almost like an affirmative defense. It's presumed that the break was missed due to the press of business unless it can come forward with its record for that day showing no, no, no, the employee wanted to. I think that's exactly right. There is a presumption that it was voluntary, at least from the employer's point of view. Right. I mean, I don't disagree with that. Well, actually, under the law, the holding of Safeway bonds is the presumption is the miss break or break problem was due to the press of business unless the employer has a record that the break was missed voluntarily. But under Safeway bonds, as I look at the language here, it indicates that the policy of not paying wage premiums when required is the question. And in this case, as I understand it, there was no requirement that the employees take extended or they were shortened, the lunch breaks were shortened, and therefore, and I'm sure there was no compulsion. They didn't have to do it. Well, that's true. If you're compelled, then it's not a voluntary break, in essence. And what happened in Safeway bonds is there were thousands, actually, I think it might have been in the middle, there were so many employees in so many hours that there were many, many, many break instances that the computer data showed were short, missing, or late, and the supermarket chain had no record and wanted to use the defense that had been unsuccessful and brinkered to defeat certification, that all of these are individual issues of whether it was voluntary or the press of business on that day. You may want to reserve some of your time. I want to reserve some time. You don't have much. We'll help maybe a little bit. Thank you. Let's hear from opposing counsel. Good morning. Dale Dixon for Jenny Craig. The company has a payment policy, and the policy is to be paid for all hours worked. The issue of the premium is the premium is paid when it's owed. It's true that the computer system that's used to record the time and generate paychecks gives an automatic hour premium if someone does not take a lunch during that day. The legal requirement here under brinker and all the cases after is that the employer, in this case, Jenny Craig, has to provide the opportunity to take the break. Brinker and the other cases have made it clear that not taking the break, taking a late break, taking a short break, that's not a violation of the labor code. It's a question of whether it's required, right? Whether it's required. Yeah. If a payment is required, absolutely. Yes. And what the plaintiff would like to do in this case is make several leaps. One of the points that I wanted to raise is this is a new argument that was raised for the first time on the motion for reconsideration when class certification was denied. If it were a timely argument, there's no requirement that Jenny Craig provide the written policy for what potential remedies exist if you miss a meal break or if you take a late break or if you have a short break. And then the issue really does become, is it required? Someone could take a 29-minute lunch break. That would appear to not meet the 30-minute requirement, but there are cases that allow this de minimis difference and they don't call it a violation. You don't get the one-hour premium because you couldn't keep track of 29 minutes. Now, if the employer said, hey, I know it's only been 29 minutes, but you need to clock back in because you have work to do, that's a very different story. This really assumes violations to even get to the point that plaintiff would like to make at this stage. Help me with the procedural aspect. I understand you just say that the argument that counsel is making at this point was not properly raised before district court. Is that correct? The issue of the payment system as a policy was raised late in the certification process. And I gather that was in order to try to deal with the commonality issue. Yes. Okay. Yes. And it was raised in the motion for reconsideration. The motion for reconsideration said the company has an affirmative duty to tell employees what their potential remedy is if they miss a break. And that's what the briefs in this case have been about. It wasn't really touched on during the opening statement there, but there's no requirement that anyone have to provide someone with the labor code, print out the labor code and hand it to them. The only thing that this could be, and some of the cases cited that a failure to have any policy at all that pays for late missed breaks or short breaks could be a violation of unfair competition law. But that's not what this is about. This is about meal and rest breaks and the labor code. He wants a class certified. It was denied. Would you, so we can hear on rebuttal if he has an answer, go one, two, three, four, why the court was right in not certifying? The court was right in not certifying because there are too many individualized issues. There's no commonality. Even under this current theory. Let's explain. One, then two, three. We're going to have a short rebuttal. Right. No commonality. No violations. No evidence to support the violations. And, in fact, evidence and declarations submitted by plaintiff contradict the claims that were made in the complaint itself. And what are the particularized fact questions as you see them? The fact questions that are presently before us, it only deals with, I don't think there is a fact question. I think it's a question of law of whether or not there's some new obligation that no court in the past has imposed on an employer. If you want to look at the facts, the only facts that are relevant right now are what are the policies that the company has for notifying employees that they can get paid premium time. And you have a system that pays people if they miss the break. And you also have a manual system where people, including the plaintiff herself, submit manual edits and say my time wasn't right. Those are all individualized, of course. All individualized. I have nothing further to add. Okay. Unless there are other questions, we thank you very much. Counsel, because we were asking you some questions, we'll give you a minute and a half for rebuttal. Thank you, Your Honor. The first question of contention was this one on the new argument. And what happened was the defense, the opposition to service. Counsel, wait a second. He doesn't have the clock going here, so. It's all right. We'll wait until he gets it going here. Here it goes. The argument was that, oh, there were individualized questions because the employees could have done something manually to address these two types of other break irregularities, not completely missed, but the late or the short. And we urge the court to look again in the record, the excerpt of the record, it's page 147, 148, 149. Look at those forms. Those are forms to edit time mistakenly entered or missing. But we're saying all the time is correct. If I may, keen off of what Judge Ferris said, he asked him for his response. Briefly, I'd like to know, where's the commonality here? The commonality was a common system that didn't track two of the three types of break violations. This is a software issue. Yes. Or record the reasons why, even though those lines of code could have been in there that then would have met the employer's burden. No one doubts that a different computer system was used. You know, it was the same computer system throughout. Do you agree with what opposing counsel said, that this issue as currently framed was not raised until your motion for reconsideration on the commonality issue? No, we disagree, Your Honor. And where in the record was it raised before that time? The answer is that the Benton and Williams concept. No, I'm asking you, where in the record was this raised before the motion for reconsideration? Benton and Williams had not been handed down at the time of a reply brief. It was just before the oral argument and then in the motion for reconsideration. We all know courts retain jurisdiction once they certify a class to decertify a class. But once a class has not been certified, as long as the facts are not changed, if there is new law or a further consideration, I believe it's a... Okay. I don't have a case for you on that. I think we have your argument. But it was a mirror image. I have your argument. But it was not. We've let you go over a bit here, but thank you very much. Yes. Thank you both for your arguments. Thank you, Your Honor. The case just argued is submitted.
judges: Tymkovich, Farris, M. Smith